IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

JANE DOE,

      Plaintiff,

                                    Case No.  25-CV-23594

vs.

MTZ CARVER LLC,

      Defendant.

_____/

### DEFENDANT'S MOTION FOR SANCTIONS

Defendant MTZ CARVER LLC by and through undersigned counsel, respectfully moves this Court for an Order imposing sanctions against Plaintiff Jane Doe and her counsel of record James Robert Glover, Esq., Jeffrey Martin Hearne, Esq., Zhoujiang Xie, Esq., all of Legal Services of Greater Miami, Inc., and Jason Mays, Esq., of Neiman Mays Floch & Almeida, PLLC, pursuant to 28 U.S.C. § 1927 and the inherent power of this Court. In support thereof, Defendant states as follows:

### PRELIMINARY STATEMENT

Plaintiff and her counsel have unreasonably and vexatiously multiplied these proceedings by filing and maintaining a federal action that is barred by res judicata, directly contradicted by Plaintiff's own prior sworn testimony and Court filings in State Court, and pursued in bad faith after Plaintiff had full notice and opportunity to raise these exact claims in prior State Court proceedings. The claims asserted here arise from the same landlord-tenant relationship that was the subject of a prior eviction action,[1] in which a default judgment was entered against Plaintiff.

---

[1] Miami-Dade Case No. 2024-251615-CC-05

Plaintiff had actual notice of those eviction proceedings. Plaintiff and her counsel chose not to raise these claims as defenses or counterclaims in the prior eviction proceeding despite actual notice, then filed this federal action months later under a pseudonym. Further, Plaintiff appeared in domestic violence injunction hearings on January 8, 2025 and March 5, 2025, where she expressly represented to the State Court that she would be voluntarily vacating the premises and no longer needed protection.[2] Plaintiff chose not to raise any of the claims asserted in this federal action as defenses or counterclaims in that matter. Instead, after the eviction was completed, Plaintiff, represented by the same counsel as the eviction matter, filed this federal lawsuit in August 2025, using a "Jane Doe" designation despite prior cases using her real name. Plaintiff also simultaneously claimed indigent status in this Court even as she paid a substantial $11,146 lump-sum judgment and agreed to ongoing monthly rent payments of $1850 in a parallel eviction action, being represented by the same counsel of record in those matters as in the matter before this Court.[3] This sequence of events demonstrates bad faith and an unreasonable multiplication of proceedings that warrants sanctions under 28 U.S.C. § 1927 and this Court's inherent power.

## FACTUAL AND PROCEDURAL BACKGROUND

### The Complaint Is Frivolous on Its Face and Attributes No Misconduct to Defendant

The Complaint is frivolous on its face. It attributes every act of alleged misconduct solely to a non-party employee. There are no factual allegations that Defendant MTZ Carver LLC had notice, knowledge, or should have known of any purported conduct. There are no allegations that Plaintiff ever notified the owner or Defendant of the alleged harassment or coercion.

---

[2] Miami-Dade Case No. 2024-23631-FC-04
[3] Miami-Dade Case No. 2025-142082-CC-05 and Miami-Dade Case No. 2026-81291-CC-05

The Complaint further contains internal contradictions that render the claims implausible. It alleges a preexisting sexual relationship between Plaintiff and the employee that began before the tenancy[4] and ended once Plaintiff moved in.[5] It also alleges that the employee was frequently absent from the premises for weeks at a time,[6] a fact that undercuts any claim of ongoing harassment or a hostile housing environment. The complaint further alleges requirement of ongoing sex monthly to satisfy the rent but admits no such requirements were collected, at least, between August 2023 to January 2024.[7] The complaint also makes allegations Plaintiff was locked out the residence, despite attaching exhibits of pictures of the lock from inside the residence.[8] These deficiencies are detailed more fully in Defendant's pending Motion to Dismiss,[9] which is incorporated herein by reference. A pleading that names a Defendant but attributes no wrongful conduct to that Defendant, and that is internally contradictory on its face, is not the product of a reasonable pre-filing inquiry and supports a finding of bad faith under 28 U.S.C. § 1927.

The frivolity of the Complaint is further demonstrated by the stark contradictions between its allegations and Plaintiff's own earlier sworn filings in State Court. In the original petition for temporary protective order, Plaintiff made no allegations of sexual assault or that she was required to engage in sex with Defendant's employee in exchange for rent.[10] She expressly stated that the employee did not live at the property. The only harassment she described consisted of moving her child's toys, making the apartment colder through the digital thermostat,

---

[4] ECF 1, ¶¶ 9, 10
[5] ECF 1, ¶ 14
[6] ECF 1¶ 18
[7] ECF 1, ¶¶ 14, 15, 16
[8] ECF 1 ¶ 21, 22, ECF 1-7
[9] ECF 20
[10] ECF 1-8, Pg. 5, ¶14

3

locking her out, threatening to kick her out and attempting to pull her out of the unit. Plaintiff referenced a December 13, 2024, text message in which she was told to "Put all her belongings into storage due to her ignoring his calls and sexual advances."[11]

By contrast, Plaintiff's Complaint here alleges that on January 16, 2024, Defendant's employee demanded sex in exchange for allowing Plaintiff to reside at the property and that Plaintiff refused sex with the employee "toward the end of 2024."[12] This is a material factual misrepresentation. The Complaint also alleges ongoing sexual harassment and coercion that is nowhere mentioned in Plaintiff's earlier sworn TRO petition.[13] These contradictions demonstrate that the Complaint was not the product of a reasonable pre-filing inquiry and was instead filed in bad faith.

### Prior Eviction Action and Default Judgment

On or about December 26, 2024, Defendant initiated eviction proceedings against Plaintiff for non-payment of rent and holdover.[14] A default judgment was entered against Plaintiff.[15] Plaintiff had actual notice of the eviction proceedings evidenced by an email Plaintiff sent Defendant's counsel confirming that she had voluntarily vacated the premises, left the key inside, and was no longer in possession, on March 24, 2025.[16] Plaintiff's current counsel, James Glover, was copied on that email.[17] Despite having actual notice and the opportunity to defend and raise

---

[11] ECF 1-8, Pg. 5, ¶14, next to last paragraph
[12] ECF 1, ¶¶ 14,19
[13] ECF 1-8, Pg. 5, ¶14
[14] Miami-Dade County Court, Case No. 2024-251615-CC-05
[15] Miami-Dade County Court, Case No. 2024-251615-CC-05, DIN 19
[16] A true and correct copy of the March 24, 2025 email is attached hereto as Exhibit "A"
[17] A true and correct copy of the March 24, 2025 email is attached hereto as Exhibit "A"

4

any claims she had regarding the tenancy, Plaintiff did not do so. The eviction proceeded to completion.

**The Domestic Violence Injunction Proceedings and Plaintiff's Sworn Representations**

Contemporaneously with the eviction proceedings, Plaintiff pursued a temporary protective order ("TPO") / domestic violence injunction against Defendant's employee.[18] On January 8, 2025, Plaintiff appeared at a hearing in that matter and testified under oath that she was voluntarily moving out of the property in February 2025, and would no longer need the protection of the injunction.[19] On March 5, 2025, Plaintiff again appeared regarding the temporary injunction, and agreed in open Court to let the TPO auto-dissolve on April 2, 2025.[20] These representations were made while Defendant's eviction proceedings were actively pending and after Plaintiff had already received notice of the eviction. Plaintiff did not allege nor raise any of the claims she now asserts in this federal action during those proceedings despite filing for the TRO, appearing at multiple hearings and having the opportunity to do so.[21]

**The Federal Action Was Filed After the Prior Actions Were Completed**

Plaintiff did not file this federal action until August 2025, five months after the eviction was completed and after the TRO had dissolved. The operative Complaint asserts claims under the Fair Housing Act and Florida law arising from the same landlord-tenant relationship that was the subject of the prior eviction and TRO proceedings. Plaintiff designated herself as "Jane Doe" in this federal case, despite multiple prior State Court cases (including several eviction matters and TPO) proceeding under her real name. Plaintiff's counsel had actual knowledge of the prior

---

[18] Miami-Dade Case No. 2024-23631-FC-04, DIN 1-9
[19] Miami-Dade Case No. 2024-23631-FC-04, DIN 13
[20] Miami-Dade Case No. 2024-23631-FC-04, DIN 21, 22, 23
[21] ECF 1-8, Pg. 5, ¶14

proceedings including the eviction and the TRO as they were included as exhibits in Plaintiff's complaint.[22]

**Inconsistent Financial Representations and Failure to Advise the Court Further Demonstrate Bad Faith**

Plaintiff and her counsel had an ongoing obligation under Rule 11 to make reasonable inquiries into the veracity of information filed with the Court and to advise the Court of any changes in her financial circumstances. *See Thomas v. Gen. Motors Acceptance Corp.*, 288 F.3d 305, 306 (7th Cir. 2002); *see also Attwood v. Singletary*, 105 F.3d 610, 613 (11th Cir. 1997) (per curiam) ("Rule 11 requires [a litigant] to make reasonable inquiries into the veracity of information filed before the court and to advise the court of any changes. … [O]bligations under Rule 11 are not measured solely at the time of filing."

James Glover had actual knowledge of the $11,146 payment (as he personally filed the Motion to Dismiss the later eviction action on that basis) yet never advised this Court of that material change in Plaintiff's financial circumstances. Further, James Glover appeared as counsel of record where Plaintiff advised she had received a job making $16/hour and was receiving $967 in cash benefits of SSDI for her child. During a meet-and-confer on July 16, 2026, Plaintiff's counsel represented that they did not believe an update was required and offered to update Plaintiff's IFP application in this case. That belated offer only confirms that an update was necessary.

Plaintiff's counsel, during that conference, cited two cases *Balan v. Vestcor Fund XXII*, 2020 WL 6786191, for their opposition to this motion and support their position that Plaintiff's

---

[22] ECF 1-8, 1-9, 1-11

claims are not barred by res judicata. The cases cited are distinguishable from the matter at bar. In the prior eviction action between the parties herein, Defendant sought both possession and recovery of unpaid rent in excess of $26,922.[23] It was therefore not a pure summary possession-only action. Plaintiff had actual notice of those proceedings, as confirmed by the March 24, 2025, email on which James Glover was copied, opportunity to engage with it and chose not to. Further, counsel had knowledge of the domestic violence injunction proceedings and the allegations raised therein as the domestic violence petition was attached as an Exhibit to Plaintiff's complaint. Despite having both notice and opportunity before two separate Courts, Plaintiff chose not to raise any of the claims she now asserts in this federal action. Instead, Plaintiff waited until after the eviction was completed and the TRO dissolved to file this separate lawsuit under a pseudonym. This deliberate decision to hold these claims in reserve and pursue them in a new federal action supports a finding of bad faith and unreasonable multiplication of proceedings under 28 U.S.C. § 1927.

Plaintiff's counsel additionally cited *K.D. Lewis Enterprises Corp. v. Smith*, 445 So.2d 1032 (Fla. 5th DCA 1984), and represented that this case supported the position that counterclaims are not required in a one-count summary eviction proceeding. That case does not support that argument. *K.D. Lewis* addressed the procedural requirement under Florida Statute § 83.60(2) that a tenant must deposit rent into the court registry to raise defenses other than non-payment. It did not discuss res judicata, and in that *K.D. Lewis* case the tenant actually filed a counterclaim. The cases provided and relied on by Plaintiff offer no authority for the proposition that Plaintiff was free to withhold these claims or that they are not barred by res judicata.

---

[23] Miami-Dade County Court, Case No. 2024-251615-CC-05, DIN 2, ¶ 12

Even assuming counterclaims were not strictly compulsory in the prior actions, Plaintiff had actual notice of those proceedings. Actual notice in the eviction action as it was confirmed by Plaintiff in the March 24, 2025, email that she copied her current counsel, James Glover.[24] Plaintiff and her counsel had notice of the TRO proceedings where Plaintiff appeared on January 8 and March 5, 2025, making sworn representations about voluntarily vacating the premises and not seeking further protection, as she provided them TRO petition as an Exhibit in her Complaint. [25] Despite having both notice and opportunity in two separate matters before two separate Courts, Plaintiff chose not to raise any of the claims she now asserts in this federal action. Instead, Plaintiff waited months after the eviction was completed and the TRO dissolved to file this separate lawsuit under a pseudonym. Florida law recognizes that even when counterclaims are permissive, claims arising from the same transaction or occurrence can be barred by res judicata under the transactional test. Plaintiff's deliberate decision to hold these claims in reserve and pursue them in a new federal action after the eviction was resolved and TRO dissolved supports a finding of bad faith and unreasonable multiplication of proceedings under 28 U.S.C. § 1927, independent of any strict res judicata analysis.

## LEGAL STANDARD

### A.      Sanctions Under 28 U.S.C. § 1927

28 U.S.C. § 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Section 1927 "imposes an obligation on attorneys throughout the entire litigation to avoid dilatory tactics"

---

[24] Exhibit "A"
[25] ECF 1-8, Pg. 5 ¶14, Miami Dade Case No. 2024-23631, DIN 15, 21, 22

and authorizes sanctions when there is conduct "constituting or akin to bad faith." *In re 60 E. 80th St. Equities, Inc.*, 218 F.3d 109, 115 (2d Cir. 2000); *Huebner v. Midland Credit Mgmt., Inc.*, 897 F.3d 42, 55 (2d Cir. 2018). Bad faith includes pursuing "frivolous contentions" and engaging in "intentionally dilatory conduct." *ACLI Gov't Sec., Inc. v. Rhoades*, 907 F. Supp. 66, 68 (S.D.N.Y. 1995).

### B.      The Court's Inherent Power

Federal Courts have the inherent power "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases" and to impose sanctions for conduct that abuses the judicial process, including the assessment of attorney's fees against a party or counsel that has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). Further, the Courts' inherent "power includes the ability to fashion an appropriate sanction for conduct which abuses the judicial process, such as the assessment of attorneys' fees against a party that has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Reichmann v. Neumann*, 553 F. Supp. 2d 307, 319 (S.D.N.Y. 2008) (citations omitted). To impose sanctions under the inherent power, the Court must find that the challenged claims were (1) without a colorable basis, and (2) brought in bad faith, i.e., motivated by improper purposes such as harassment. *Enmon v. Prospect Cap. Corp.*, 675 F.3d 138, 143 (2d Cir. 2012). Bad faith may be inferred when actions are "so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose." *Id.* The only meaningful difference between an award of sanctions under Section 1927 and the inherent power of the Court is that Section 1927 awards can only be made against attorneys, while awards under the inherent power may be made against an attorney, a party or both. *Id.* Requests for sanctions under Section 1927 and this Court's inherent power may be decided in a single inquiry.

9

## ARGUMENT

### Plaintiff and Her Counsel Acted in Bad Faith by Filing and Maintaining This Action After Having Full Notice and Opportunity to Raise These Claims in Prior State Court Proceedings

The claims in this federal action arise from the exact same landlord-tenant transaction that was the subject of the prior eviction action and TRO proceedings.[26] Under Florida's transactional test for res judicata, Plaintiff could and should have raised any alleged sexual harassment, coercion, retaliation, or Fair Housing Act violations as affirmative defenses or counterclaims in the State Court proceedings. Plaintiff had actual notice of the eviction proceedings, as confirmed by the March 24, 2025 email on which her current counsel, James Glover, was copied.[27] Plaintiff had notice of the TPO proceedings, as she was the complainant, and failed to allege the circumstances she now advances before this Court.[28] Despite having both notice and opportunity to advance these claims in two separate Courts on two separate matters, Plaintiff chose not to, and instead has advanced these claims before this Court in a separate filing. Plaintiff waited months after the eviction was completed and the TRO was dissolved to file this federal action. This is precisely the type of conduct that constitutes bad faith and unreasonable multiplication of proceedings under §1927 and the inherent power.

### Plaintiff's History of Actively Participating in Eviction Proceedings

Plaintiff has a demonstrated history of actively participating in eviction proceedings, when she chooses to do so. For example, in Miami-Dade Case No. 2022-036813-CC-05, Plaintiff filed a handwritten emergency motion and written response.[29] In Miami-Dade Case No.

---

[26] Miami-Dade Case No. 2024-251615-CC-05, Miami-Dade Case No. 2024-23631-FC-04
[27] Exhibit "A"
[28] ECF 1-8, Pg. 5 ¶14
[29] Miami-Dade Case No. 2022-036813-CC-05, DIN 16

2015-001729-CC-24, Plaintiff filed a pleading that was later stricken by the Court.[30] Recently, in the eviction actions filed against her by her new landlord, Plaintiff appeared, filed a handwritten answer, and ultimately entered into a stipulation to pay $11,146 in arrears and continue to pay $1850 in rent.[31] Even more recently, Plaintiff has appeared, filed a handwritten answer, filed another IFP application, deposited money into the Court's registry and requested relief on a Motion to Determine Rent on a second eviction action filed by the same landlord Plaintiff entered into the stipulation, and paid in full $11,146, prior.[32]  Despite this clear pattern of engaging with eviction proceedings, including filing responses and emergency motions, Plaintiff failed to file any response or raise any of the claims she now asserts in this federal action. Plaintiff had actual notice of those proceedings, especially the TRO proceeding she initiated. This selective decision not to litigate her claims in the proper forum, followed by the later filing of this federal action, supports a finding of bad faith and unreasonable multiplication of proceedings.

### The Timeline of Events Demonstrates That This Action Was Brought to Multiply Proceedings Rather Than Vindicate Rights

The sequence of events is telling: (1) eviction proceedings initiated in December 26, 2024, and default judgment entered in March 12, 2025; (2) Plaintiff files TPO proceedings on December 3, 2024, then appears in subsequent TPO hearings on January 8 and March 5, 2025, representing she will voluntarily leave the premises and will not pursue protection further and making no allegations as made in this matter; (3) Plaintiff emails Defendant's counsel on March 24, 2025, confirming vacatur, with Glover copied; (4) eviction is completed by action of the Court on March

---

[30] Miami-Dade Case No. 2015-001729-CC-05, Entered September 15, 2015
[31] Miami-Dade Case No. 2025-142082-CC-20, DIN 9, 18, 31 and 2026-81291-CC-05, DIN 7, 9
[32] Miami-Dade Case No. 2026-81291-CC-05, DIN 7, 9, 15, 16, 20

31, 2025;[33] (5) April 2, 2025, the TRO is dissolved by Agreement;[34] (6) months later, in August 2025, Plaintiff files this federal action, after everything was already resolved in two separate State Court matters. This timeline supports the conclusion that Plaintiff and her counsel chose to hold these claims in reserve rather than raise them where they belonged. Such conduct unreasonably multiplies proceedings and warrants sanctions.

**Inconsistent Financial Representations Further Demonstrate Bad Faith**

Plaintiff's claim of indigence in this Court is undermined by her payment of $11,146 in full in a parallel eviction action while this case was pending, along with her agreement to pay ongoing rent of $1,850 per month.[35] Under 28 U.S.C. § 1915(e)(2)(A), this Court has authority to revisit whether her allegation of poverty remains true. Even assuming arguendo that some of the funds came from third parties, Plaintiff's counsel of record, James Glover, had actual knowledge of the $11,146 payment (as he filed the Motion to Dismiss the later eviction on that basis) yet never informed this Court of Plaintiff's changed financial circumstances. Plaintiff had an ongoing duty to inform this Court of any changes to her financial circumstances. Plaintiff's failure to do so, combined with the other contradictions in her sworn statements across multiple proceedings, supports a finding of bad faith. Pursuing this action while making inconsistent financial representations to different Courts is conduct that warrants sanctions.

**CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that this Court enter an Order:

---

[33] Miami-Dade Case No. 2024-251615-CC-05, DIN 22
[34] Miami-Dade Case No. 2024-23631-FC-04, DIN 21, 22
[35] Miami-Dade Case No. 2025-142082-CC-20, DIN 18, 31

12

(1)   Awarding Defendant its reasonable attorney's fees and costs incurred in defending this action, to be paid by Plaintiff's counsel of record (James Robert Glover, Jeffrey Martin Hearne, Zhoujiang Xie, and Jason Mays) jointly and severally under 28 U.S.C. § 1927, and by Plaintiff under the Court's inherent power;

(2)   Dismissing this action **with prejudice**; or alternatively, Dismissal as required under 28 U.S.C. § 1915(e)(2)(A); and

(3)   Granting such other and further relief as the Court deems just and proper, including, if the Court finds the conduct particularly egregious, referring the matter to the Ad Hoc Committee on Attorney Admissions, Peer Review and Attorney Grievance for the Southern District of Florida and/or Florida Bar, or other appropriate disciplinary authority.

**CERTIFICATE OF CONFERRAL PURSUANT TO LOCAL RULE 7.1(a)(3)**

Pursuant to Local Rule 7.1(a)(3), undersigned certifies that counsel for Defendant conferred with Plaintiff's counsel in a good-faith effort to resolve the issues raised herein. Plaintiff opposes this motion.

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via electronic mail via CM/ECF filing to all counsel of record, this 17th day of July, 2026.

*Ariel E. Mitchell, Esq.*
Ariel E. Mitchell, Esq.
Florida Bar No. 125714
1951 NW 7th Ave.
Suite 160, #306
Miami, FL 33136
(305) 903-5835
Email service: ariel@arielesq.com

13